IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROSA ASHFORD, and
OTIS ASHFORD                                                                                   PLAINTIFFS

v.                                                                         Civil No. 1:11-cv-57-HSO-JMR

WAL-MART STORES, LP                                                                    DEFENDANT


**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
*DAUBERT* MOTION TO EXCLUDE PLAINTIFF'S EXPERT, DR. GEORGE
CARTER'S, EXPERT TESTIMONY, AND GRANTING DEFENDANT'S
MOTION TO STRIKE DR. CARTER'S LETTER IN RESPONSE TO WAL-
MART'S *DAUBERT* MOTION**

BEFORE THE COURT are two motions: Defendant Wal-Mart Stores, LP's *Daubert* Motion [59] to Exclude Plaintiff's Expert, Dr. George Carter's, Expert Testimony, and Defendant's Motion [67] to Strike Dr. Carter's Letter in Response to Wal-Mart's Motion to Exclude Dr. Carter's Expert Testimony.  Plaintiffs have filed a Response [62] to Defendant's *Daubert* Motion, and Defendant a Reply [65].  Plaintiffs have also filed a Response [68] to Defendant's Motion to Strike Dr. Carter's Letter.  After considering the pleadings on file, the record, and relevant legal authorities, the Court finds that Defendant's Motion [67] to Strike Dr. Carter's Letter in Response to Wal-Mart's Motion to Exclude Dr. Carter's Expert Testimony, should be granted, and Defendant's *Daubert* Motion [59] to Exclude Plaintiff's Expert, Dr. George Carter's, Expert Testimony, should be granted in part and denied in part.

I.  FACTS AND PROCEDURAL HISTORY

This case arises from an alleged slip and fall, which occurred on March 15, 2009, at Defendant's Wal-Mart store in Pascagoula, Mississippi.  Plaintiff Rosa

Ashford contends that she sustained injuries when she slipped and fell on a puddle of rainwater. Pl.'s Compl. [1-2] at pp. 2, 5-6. She alleges the rainwater was leaking from the roof or an air conditioning duct. *Id.* at p. 2. Plaintiffs have designated George H. Carter, Ph.D, as an expert economist to testify as to Ms. Ashford's alleged economic losses. Pls.' Design. of Experts [6] at p. 2; Pls.' Suppl. Design. of Experts [41] at p. 2. Defendant has moved to exclude Dr. Carter's opinions regarding Ms. Ashford's loss of wages, fringe benefits, and household services.

With their Response to Defendant's Motion to exclude Dr. Carter's testimony, Plaintiffs submitted a letter written by Dr. Carter. Letter [62-1], Ex. A to Pls.' Resp. [62] to Def.'s Mot. to Strike. Dr. Carter states in the letter that it is written in response to Defendant's *Daubert* Motion. *Id.* at p. 1. Defendant has moved to strike Dr. Carter's letter, contending that it is an improper attempt by Plaintiffs to supplement Dr. Carter's Report after the expiration of the discovery deadline, and "to explain and correct the deficiencies pointed out in Wal-Mart's *Daubert* Motion." Def.'s Mot. to Strike [67] at p. 3. In response, Plaintiffs maintain that Dr. Carter's letter should not be stricken because it is not a supplementation, but instead an elaboration and explanation of "the facts, data, principles, and methods to which Dr. Carter has already submitted [] his opinions and findings in his original report." Pls.' Resp. [68] to Def.'s Mot. to Strike at pp. 1-2. Plaintiffs contend that "Dr. Carter's original report was in <u>no way</u> incomplete." *Id.* at p. 2 (emphasis supplied).

2

## II.  DISCUSSION

A.  Defendant's Motion to Strike Dr. Carter's Letter in Response to Wal-Mart's Motion to Exclude Dr. Carter's Expert Testimony

   1.  Legal Standard

Unless otherwise stipulated or ordered by the Court, expert designations must be accompanied by a written report if the witness is one retained or specially employed to provide expert testimony.  FED. R. CIV. P. 26(a)(2)(B).  In addition to other information, "[t]he report must contain a complete statement of all opinions the witness will express and the basis and reasons for them."  FED. R. CIV. P. 26(a)(2)(B)(I).  "A party must make these disclosures at the times and in the sequence that the court orders."  FED. R. CIV. P. 26(a)(2)(D).  Local Uniform Civil Rule 26(a)(2) provides:

> A party must make full and complete disclosure as required by FED. R. CIV. P. 26(a)(2) and L.U.Civ.R. 26(a)(2)(D) no later than the time specified in the case management order. Absent a finding of just cause, failure to make full expert disclosures by the expert designation deadline is grounds for prohibiting introduction of that evidence at trial.

L.U. CIV. R. 26(a)(2)(D).  "A party is under a duty to supplement disclosures at appropriate intervals under FED. R. CIV. P. 26(e) and in no event later than the discovery deadline established by the case management order."  L.U. CIV. R. 26(a)(5). "[T]he purpose of the discovery rules regarding experts is to prevent ambush at trial with wholly new opinions and/or bases or examples thereof."  *Brawhaw v. Mariner Health Care, Inc.,* No. 2:04CV322-P-B, 2008 WL 2004707, *4 (S.D. Miss. May 8, 2008); *see also Reed v. Iowa Marine and Repair Corp.,* 16 F.3d 82, 85 (5th Cir.

3

1994)(the purpose of FED. R. CIV. P. 26(e) is to prevent prejudice and surprise).

    2.    <u>Analysis</u>

The discovery deadline was August 1, 2012.  Dr. Carter's letter in response to Defendant's *Daubert* Motion was written on August 21, 2012, and submitted to Defendant on September 4, 2012.  Dr. Carter's letter is properly characterized as a supplementation to his Report, and because it was submitted after the discovery deadline, it is untimely.  L.U. CIV. R. 26(a)(5).  Accordingly, Dr. Carter's August 21, 2012, letter should be stricken, and it will not be considered when deciding Defendant's *Daubert* Motion [59] to Exclude Plaintiff's Expert, Dr. George Carter's, Expert Testimony.

B.    <u>Defendant's Motion to Exclude Plaintiff's Expert, Dr. George Carter's, Expert Testimony</u>

    1.    <u>Legal Standard</u>

"The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible."  FED. R. EVID. 104(a).  "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test."  *Mathis v. Exxon,* 302 F.3d 448, 459-60 (5th Cir. 2002).  Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b)  the testimony is based on sufficient facts or data;

    (c)  the testimony is the product of reliable principles and methods; and

    (d)  the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

  The Court functions as a gatekeeper and ensures that an expert is properly qualified, and that his testimony is both reliable and relevant. *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 668 (5th Cir. 1999)(relying on *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993)); *see United States v. McMillan,* 600 F.3d 434, 456 (5th Cir. 2010). Expert testimony is relevant when it relates to any issue in the case. *Daubert*, 509 U.S. at 591. Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93.

  To be reliable, an expert opinion must be based on sufficient facts and data, and be the product of reliable principles and methods. FED. R. EVID. 702(b) and (c). Otherwise, it is "'unsupported speculation or subjective belief.'" *Johnson v. Arkema, Inc.,* 685 F.3d 452, 459 (5th Cir. 2012)(citing *Daubert,* 509 U.S. at 590). "The court should 'make certain that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Hodges v. Mack Trucks, Inc.,* 474 F.3d 188, (5th Cir. 2006)(citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999)). *Daubert* "provides an illustrative list

of factors that may aid a court in evaluating reliability." *Mathis,* 302 F.3d at 460. These factors include

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted in the scientific community.

*Kumho,* 526 U.S. at 149-50. "These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). "But the existence of sufficient facts and a reliable methodology is in all instances mandatory." *Id.*

    2. <u>Analysis</u>

        a. <u>Dr. Carter's Opinion Regarding Loss of Wages</u>

Defendant contends that Dr. Carter's opinion regarding Ms. Ashford's alleged loss of wages is unreliable. Def.'s Mem. [60] in Supp. of Mot. to Exclude [59] at p. 5. Dr. Carter calculates Ms. Ashford's loss of wages by considering her earnings from 2006 to 2008, as gleaned from her W-2's. Dr. Carter's Expert Report [60-1] at p. 6, Ex. A to Def.'s Mem. [60] in Supp. of Mot. to Strike. He does not consider Ms. Ashford's earnings from 2005, although she was working for the same employer in 2005, and her earnings from 2005 were available to him. *Id.* Defendant argues that Dr. Carter should have included Ms. Ashford's earnings from 2005 in his lost wages

6

calculations: "Obviously, if Dr. Carter used all of the wage data available, the average wage calculation would be reduced significantly and the derivative calculations based upon the reduced four-year average wage would likewise be significantly reduced."  Def.'s Mem. [60] in Supp. of Mot. to Exclude [59] at p. 6.

Dr. Carter will be allowed to testify as to Ms. Ashford's alleged loss of wages.  The flaws Defendant perceives in Dr. Carter's exclusion of Ms. Ashford's 2005 earnings go to the weight of Dr. Carter's opinion, and not its admissibility.  *See Flight Line, Inc. v. Tanksley,* 608 So. 2d 1149, 1165 (Miss. 1992).  However, Dr. Carter's opinion that Ms. Ashford has suffered a loss of income "continuing through her work life expectancy" should be excluded because it is based upon Dr. John McCloskey's assumption that Ms. Ashford is totally and permanently unemployable.  *See* Dr. Carter's Expert Report [60-1] at p. 6.  Dr. McCloskey's opinion in this regard has already been excluded as unreliable.  Order [70].  Because Dr. Carter's opinion that Ms. Ashford has suffered a total and permanent loss of wages is based on an unreliable premise, this particular opinion should be excluded.  However, Dr. Carter may otherwise testify to Plaintiff's alleged loss of wages.

    b. <u>Dr. Carter's Opinions Regarding Ms. Ashford's Loss of Fringe Benefits</u>

Dr. Carter calculates the monetary value of Ms. Ashford's total discounted loss of fringe benefits as $61,039.00.  Dr. Carter's Expert Report [60-1] at p. 11.  This calculation assumes that Ms. Ashford has lost fringe benefits for the remainder of her work life expectancy.  *Id.*  Dr. Carter's Report provides that Ms. Ashford's

7

"employer contributed to fringe benefits of employment," and that United States labor statistics compiled by the U.S. Census Bureau were utilized in forming this opinion. *Id.* The Report states that Ms. Ashford "is assumed to receive typical employer-provided fringe benefits of employment," including insurance, retirement, unemployment compensation, and workers' compensation benefits. *Id.* at pp. 11-12. Dr. Carter's Report does not provide the name of Ms. Ashford's employer, but both Plaintiffs' and Defendant's vocational experts' Reports acknowledge that Ms. Ashford was employed by Singing River Health System from 2005 to 2009. Expert Report of Pete Mills [60-7] at p. 3; Expert Report of Leon Tingle [60-6] at p. 2.

Defendant argues that Dr. Carter's opinions regarding Ms. Ashford's loss of fringe benefits should be excluded because "there is no evidence Plaintiff received *any* fringe benefits of the type alluded to by Dr. Carter in his report and he cites to no evidentiary support in the record either supporting the assumption that Mrs. Ashford received fringe benefits or supporting the type or amount of fringe benefits she received." Def.'s Mem. [60] in Supp. of Mot. to Exclude at p. 11 (emphasis supplied). Dr. Carter's Report discloses the factual predicate for his opinion regarding the alleged loss of fringe benefits, namely the fact that her employer provided benefits and United States labor statistics evaluating typical employer provided fringe benefits. Whether Ms. Ashford participated in her employer's elective benefit programs and whether her level of participation should have affected Dr. Carter's conclusion, goes to the weight of Dr. Carter's opinion and not its admissibility. Dr. Carter should be allowed to testify as to Ms. Ashford's alleged loss

8

of fringe benefits. However, his opinion that Ms. Ashford has incurred a complete loss of fringe benefits through her work life expectancy should be excluded because it is based upon Dr. John McCloskey's assumption that Ms. Ashford is totally and permanently unemployable. Dr. McCloskey's opinion in this regard has already been excluded as unreliable. Order [70]. Because Dr. Carter's opinion that Ms. Ashford has suffered a complete loss of fringe benefits because she is totally and permanently unemployable, is based on an unreliable premise, this particular opinion should be excluded. However, Dr. Carter may otherwise testify as to Plaintiff's alleged loss of fringe benefits.

      c.    <u>Dr. Carter's Opinion Regarding Loss of Household Services</u>

Dr. Carter calculates the total discounted monetary value of lost household services as $281,649.00. Dr. Carter's Expert Report [60-1] at p. 13. His Report provides that "[Ms. Ashford] and her husband will testify to a 75% loss in household services provision." *Id.* at p. 14. The Report states that Dr. Carter calculated the monetary value of Ms. Ashford's household services using the Plaintiffs' expected testimony that her household services have been diminished by 75 percent, and a study entitled THE DOLLAR VALUE OF A DAY: 2010 DOLLAR VALUATION, published by Expectancy Data (Shawnee Mission, Kansas, 2011).

Defendant argues that this opinion should be excluded because Dr. Carter is not qualified to make such a determination. Defendant bases its argument on *Davis v. ROCOR Intern.,* No. 3:00-CV-864-B-N, 226 F. Supp. 2d 839, 842 (S.D. Miss. 2002), a case where the Court excluded an economist's opinion as to the monetary value of

lost household services. In *Davis,* the Court excluded the economist's opinion because the economist drew his own conclusion regarding the percentage of lost household services. *Id.* The Court found that the economist was not qualified to determine the extent of lost household services, and therefore, his calculations had an unreliable factual basis. *Id.*

Here, the percentage of alleged lost household services was not determined by Dr. Carter. In making his monetary calculations, Dr. Carter relied on Plaintiffs' expected testimony that Ms. Ashford's household services have been diminished by 75 percent. Information regarding Ms. Ashford's performance of household duties is within Plaintiffs' personal knowledge. Having been presented no authority that lay testimony cannot constitute a sufficient foundation for an economist's calculations of the value of household services, or that an expert may not rely on such expected testimony, the Court finds that Plaintiffs' expected testimony provides a sufficient factual foundation for Dr. Carter's opinion regarding the value of the alleged lost household services.

Defendant contends that Dr. Carter's opinion regarding loss of household services should also be excluded because Plaintiffs have not established that THE DOLLAR VALUE OF A DAY is a reliable source among economists. This study, however, appears to be commonly relied upon by economists when calculating the economic value of lost household services. *See* Thomas R. Ireland, *Uses of the American Time Use Survey to Measure Household Services: What Works and Does Not Work,* 8 J. Legal Econ. 61 (Oct. 2011). Defendant further argues that Dr. Carter's opinion is

not reliable because he utilizes estimates from tables contained in THE DOLLAR VALUE OF A DAY, instead of basing his calculations on the specific amount of time that Ms. Ashford engaged in particular household tasks prior to the date of her alleged injuries.  Defendant's criticism, in this regard, affects the weight to be assigned to Dr. Carter's testimony, and not its admissibility.  *See Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 422 (5th Cir. 1987)( "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").  In sum, Dr. Carter should be allowed to testify as to the monetary value of the alleged loss of household services.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Wal-Mart Stores, LP's Motion [67] to Strike Dr. Carter's Letter in Response to Wal-Mart's Motion to Exclude Dr. Carter's Expert Testimony, is **GRANTED**.  Dr. George H. Carter's August 21, 2012, letter, submitted by Plaintiffs Rosa and Otis Ashford after expiration of the discovery deadline, is stricken.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Wal-Mart Stores, LP's *Daubert* Motion [59] to Exclude Plaintiff's Expert, Dr. George Carter's, Expert Testimony, is **GRANTED IN PART AND DENIED IN PART**.  Dr. Carter's opinion that Plaintiff Rosa Ashford has suffered $204,669.00 in future lost wages, which is based on the premise that she is totally and permanently unemployable, will be excluded.  Dr. Carter's opinion that Ms. Ashford has suffered

$49,526.00 in future lost fringe benefits, which is based on the premise that she is totally and permanently unemployable, will be excluded.  In all other respects, Defendant's Motion [59], is denied.

**SO ORDERED AND ADJUDGED,** this the 15th day of January, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE